**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3097-24

KATHY MCDONALD AGENT
FOR JIN JIN HU,

    Plaintiff-Respondent,

and

JIN JIN HU,

    Plaintiff,

v.

YANNI FAIKARIS[1] and
MARIA E. COSTA,

    Defendants-Appellants.

_____

Submitted May 28, 2026 – Decided August 14, 2026

Before Judges Mawla and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1976-24.

_____

[1] In the answer with counterclaim, Fikaris stated he had been improperly pleaded as Yanni Faikaris.

McDowell Law, PC, attorneys for appellants (Michael
J. Hagner, of counsel and on the briefs).

John D. Wilson, attorney for respondent.

PER CURIAM

In this residential landlord-tenant dispute, defendants Yanni Fikaris and Maria E. Costa appeal from an April 24, 2025 Law Division order dismissing their breach of contract counterclaim and denying their request for attorney's fees.[2] We affirm in part, and reverse and remand in part, for the reasons expressed in this opinion.

## I.

Plaintiff Kathy McDonald is the listing agent for the sale and lease of a house owned by Jin Jin Hu in Haddonfield. Defendants have leased the house from Hu since August 2020. In June 2022, after learning the house was listed for sale and Hu and the buyer had entered into a contract, defendants, through their counsel, exercised their right of first refusal to purchase the house but were ultimately unable to complete the purchase. Through counsel, defendants also notified McDonald of a detailed list of maintenance issues with the house that

---

[2] Defendants do not appeal from the dismissal of their fraudulent concealment counterclaim.

required repair or replacement. Defendants were advised they could deduct the cost of repairs from the rent, provided they submitted receipts.

The parties signed another one-year lease (Lease) to rent the house from August 16, 2023, to August 15, 2024. The Lease set rent at $7,500 per month, due on the first of each month. Under paragraph three, "Additional Rent," is defined as any cost incurred by the landlord for the tenant to comply with the Lease, including reasonable attorney's fees incurred by the landlord. This paragraph further provides:

> IF TENANT IS SUCCESSFUL IN ANY ACTION OR SUMMARY PROCEEDING ARISING OUT OF THIS LEASE, THE TENANT SHALL RECOVER ATTORNEY'S FEES OR EXPENSES, OR BOTH FROM THE LANDLORD TO THE SAME EXTENT THE LANDLORD IS ENTITLED TO RECOVER ATTORNEY'S FEES OR EXPENSES, OR BOTH AS PROVIDED IN THIS LEASE.

Defendants acknowledged the house was in good condition and assumed responsibility for all repairs except structural repairs. They also agreed in paragraph ten subsection (c) to "[t]ake good care of the [h]ouse and all equipment and fixtures in it." In contrast, under paragraph eleven, Hu is required to "repair damage to the [h]ouse and vital facilities caused by ordinary wear and tear within a reasonable time after notice by the [t]enant."

3

With no sale forthcoming and defendants' right of first refusal no longer in effect, plaintiffs offered, through a series of emails exchanged in September and October 2023, to extend the Lease for an additional two years, resulting in a three-year term at the same monthly rent. On October 14, 2023, the Lease was amended, extending the term to August 15, 2026, and confirming all other terms of the original lease remained in full force and effect.[3] In an October 21, 2023 email, Fikaris accepted the amended lease terms and reiterated they would "maintain the property when it rain[ed]." In these emails, Hu did not state he would pay for the repairs; however, he informed defendants the cost of the repairs could be deducted from the rent.

In March 2024, plaintiffs filed a summary eviction complaint against defendants, seeking judgment for $31,012 for nonpayment of $30,000 in base rent for December 2023 to March 2024, $400 in late charges, $550 in attorney's fees, and $62 for court costs. Defendants' motion to transfer the matter to the Law Division was granted on June 26, 2024. Thereafter, defendants filed an answer, asserting various defenses and counterclaims for breach of contract, fraudulent inducement, and declaratory relief.

---

[3] In their appendix, defendants rely on the amendment to the Lease, which was signed by McDonald on October 13, 2023, and Hu the following day.

4

A two-day bench trial was held, during which both parties were represented by counsel. McDonald was authorized to testify on behalf of Hu. However, she had no personal knowledge of whether defendants had paid the rent because she was not the property manager, and neither collected the rent nor had the payment registry. Following this testimony, the court granted defendants' motion to dismiss the complaint with prejudice, finding there was no evidence of nonpayment of rent.

The trial then proceeded on defendants' counterclaims. Fikaris testified he is a self-employed contractor with decades of experience in home remodeling and holds several professional certifications and licenses, including those from the Occupational Safety and Health Administration, Environmental Protection Agency, and the Institute of Inspection, Cleaning and Restoration Certification, as well as certifications in fire and water inspection, water restoration, and smoke inspection and restoration. However, his testimony was not corroborated by any documentary evidence of licenses or certifications.

According to Fikaris, shortly after moving in, he noticed water entering the basement, a problem that continued up to the trial date. Since 2020, his family experienced on average "three to five water [intrusions] per month" in the basement over a three-year period, except for nine to eleven months when

A-3097-24

drought conditions prevailed. After conducting dye tests and other professional assessments, Fikaris concluded the water intrusion resulted from problems with the foundation and drainage. He reported the water intrusion but stated no corrective measures were taken and no inspection had been conducted.

Fikaris also testified water intrusion occurred in the master bedroom after the removal of solar panels, resulting in additional leaks. However, he acknowledged the landlord addressed the water intrusion from the master bedroom window.

Fikaris testified he used his company's equipment and employees to extract the water, clean, and sanitize the basement. His testimony was supported by a detailed spreadsheet purporting to show $403,696.39 in expenses for repair and remediation, appliance replacement, security system diagnostics, boiler maintenance, and extermination.

On cross-examination, Fikaris admitted plaintiffs' contractor George Merryfield came to the house on two occasions and painted the bathroom ceiling, removed the solar panels, and painted over the mold in the sunroom and on the exterior. He also admitted the condenser unit was replaced.

McDonald, as the primary contact, was notified by certified mail with receipts, video, and text messages of the issues with the house. Defendants

A-3097-24

asserted plaintiffs agreed to allow them to deduct repair costs from rent or to reimburse them for such costs, provided receipts were submitted.

Costa, a co-tenant and Fikaris's wife, corroborated his testimony concerning the backyard flooding, water intrusion, and the notices that were sent to McDonald. She testified about additional issues with the house. Like Fikaris, she relied on the spreadsheet.

McDonald testified she did not schedule any house inspections for the necessary repairs until December 2023. She further stated contractors were hired to make repairs only after the eviction complaint was filed in March 2024.

Consistent with his report, Merryfield testified he inspected the house in 2024 and found no evidence of water damage, mold, or other habitability issues. He described the basement as "bone dry" and "a nice old basement," and stated all repairs he performed were normal maintenance, as corroborated by the invoice for $23,490.

In rendering its oral opinion, the court detailed the parties' testimony and documentary evidence. It considered the Lease and explained defendants were required to pay for all maintenance and extermination services. The court found defendants had not provided the court with any evidence beyond their maintenance obligations under the Lease. It further found the house was not

A-3097-24

uninhabitable "because [defendants] were living [in the house] the whole time." Defendants' damages claim lacked credibility because they presented no evidence regarding the amount of rent paid or deducted for repairs, and the spreadsheet reflected costs incurred by Fikaris's company. Additionally, the water intrusion was deemed "questionable." The court dismissed the counterclaim with prejudice.

However, the court granted defendants' counterclaim for declaratory relief, stating the Lease was extended to August 15, 2026. The court denied both parties' requests for attorneys' fees, reasoning that neither side prevailed on the substantive claims and defendants' success on the declaratory judgment counterclaim was insufficient to warrant a fee award under the Lease.

## II.

On appeal, defendants argue the court improperly considered the breach of contract counterclaim in relation to habitability. They also contend the court erred in denying their request for attorneys' fees.

"Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013) (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)). "We may not overturn the trial court's fact[-

A-3097-24

]findings unless we conclude that those findings are 'manifestly unsupported' by the 'reasonably credible evidence' in the record." Balducci v. Cige, 240 N.J. 574, 595 (2020) (quoting Seidman, 205 N.J. at 169).

On an appeal from a bench trial, "[w]e give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017) (quoting Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015)). "[W]e do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." Mountain Hill, L.L.C. v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (quoting State v. Barone, 147 N.J. 599, 615 (1997)).

However, where the trial court's decision constitutes a legal determination, we exercise de novo review. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Ibid.

Defendants alleged plaintiffs breached the Lease; specifically, section eleven, which addresses the landlord's obligation to repair damage caused by ordinary wear and tear. They contend their breach of contract counterclaim was

established and the court erred by considering their claim under <u>Marini v. Ireland</u>, 56 N.J. 130 (1970) and <u>Berzito v. Gambino</u>, 63 N.J. 460 (1973).

A residential lease agreement is a contract. <u>See</u> <u>Pace v. Hamilton Cove</u>, 475 N.J. Super. 568, 577-78 (App. Div. 2023), <u>rev'd and remanded on other grounds</u>, 258 N.J. 82 (2024). A breach of contract claim arises from the express terms of the lease and is governed by traditional contract principles. <u>Goldfarb v. Solimine</u>, 245 N.J. 326, 338-39 (2021). In asserting this counterclaim, defendants must establish these four elements by a preponderance of the evidence:

> first, that "[t]he parties entered into a contract containing certain terms"; second, that "[defendants] did what the contract required [them] to do"; third, that "[plaintiffs] did not do what the contract required [them] to do[,]" defined as a "breach of the contract"; and fourth, that "[plaintiffs'] breach, or failure to do what the contract required, caused a loss to the [defendants]."
>
> [<u>Globe Motor Co. v. Igdalev</u>, 225 N.J. 469, 482 (2016) (first, third, fifth, and sixth alterations in original) (quoting <u>Model Jury Charges (Civil)</u>, 4.10A, "The Contract Claim—Generally" (approved May 1998)).]

We are not persuaded the trial court improperly construed defendants' breach of contract claims as a habitability claim. The record shows the trial court correctly concluded: the parties entered into a lease agreement that

10

required defendants to be responsible for all maintenance with the house. As to the third and fourth elements, defendants did not establish plaintiffs failed to comply with paragraph eleven and make the repairs after receiving reasonable notice, as notice was not provided until June 2022, when the house was listed for sale. Notwithstanding defendants' claim, no receipts evidencing the repairs were provided to Hu.

We reject defendants' argument the court considered their counterclaim under Marini and Berzito. All residential leases contain an implied covenant or warranty of habitability. Marini, 56 N.J. at 144. A landlord's covenant of habitability and a tenant's covenant to pay rent are mutually dependent on one another. Berzito, 63 N.J. at 469. Breach of contract and breach of the implied warranty of habitability claims in residential leases are recognized as separate and distinct legal theories. See Dowler v. Boczkowski, 148 N.J. 512, 521 (1997).

Defendants did not plead a breach by the landlord of his continuing obligation to maintain an adequate standard of habitability as a defense and set off for rent. Although the court commented on the habitability of the house, noting defendants continued to reside there despite ongoing maintenance and

11

repair issues, the record confirms habitability was not the primary basis for dismissing defendants' breach of contract counterclaim.

Defendants next argue the court erred in finding they were not entitled to attorneys' fees, asserting although the court stated they "only succeeded because [McDonald] didn't know anything," it also ruled the lease was extended to August 15, 2026. We conclude Rule 1:7-4 was not satisfied here because the court did not engage in any substantive analysis of the certification of attorneys' fees and the application of paragraph three of the Lease, which defendants assert governs the grant of their claim for declaratory relief. On remand, we direct the court to make the necessary findings before deciding the attorneys' fees issue. Our decision should not be construed as an opinion on how this issue should be decided.

Affirmed in part, and reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

12

A-3097-24